# Robert Waln, indorsee of Israel Wheelen, indorsee of Wheelen and Miller *against* John Wilkins and Thomas Duncan, esquires.

A set off must be between the same parties.

New trial not grantable, on the ground of new evidence, which it was the fault of the party or *cestui que* use, not to have produced upon the trial.

MOTION for a new trial, on the part of the plaintiff.

The cause had been tried before Mr. Justice SMITH on the 3d *July 1807, at a court of *Nisi Prius* held for Philadelphia county, and the defendants obtained a verdict. It was [*462 formerly tried before the whole court in Bank, on the 13th December 1804, when a verdict passed for the plaintiff. A rule having been obtained to shew cause, why a new trial should not be awarded, the same was made absolute, after full argument in December term 1805.

4 YEATES—28

[Waln, Indorsee, v. Wilkins et al.]

SMITH, J. reported the evidence given upon the last trial. He submitted two questions of fact to the jury. 1st. Whether, under all the circumstances of the case, the note in question was intended by the parties thereto, as an accommodation note. 2dly. Whether, even supposing it be an accommodation note, the plaintiff had paid a valuable consideration therefor, in a fair course of trade; because if the fact was otherwise, and the indorsement had been made merely to save a desperate debt, the plaintiff was not intitled to recover. On the last point, the defendants' counsel gave written notice to the plaintiff to produce his books upon the trial. This was complied with, and the following entry appeared to have been made in the books of Mr. Waln.

"December 13th 1804. Dr. Israel Wheelen for check paid
    "Jared Ingersoll, esquire, 13th instant, in suit against
    "Wilkins, . . . . . . 37l. 10s.
"Do. for $7 and 12 cents for jury's expences, . 2l. 13s. 5d.

£. 40 3s. 5d.

This testimony was not adduced upon the former trial. With the present verdict he was not dissatisfied; but thought justice had been done.

The motion was grounded chiefly on the affidavit of Martha Powell. She declared on her affirmation, that "in the latter part "of 1796, a large sum of money was due to herself, her sister "Anne, and Josiah Hewes from Wheelen and Miller; that on "the affairs of that house getting into disorder, they became "uneasy, and demanded payment or security. Whereupon it "was agreed between Wheelen and Miller, William Montgom- "ery, George Bickham and Robert Waln, that the said money "should be secured under certain judgments given to them by "Joseph Miller to secure their advances for Wheelen and Miller; "that afterwards the note of the now defendants was indorsed "by and deposited by Israel Wheelen with Robert Waln, for "the purpose of paying or further securing the payment to the "said Martha, Anne and Josiah; that she has since received "part of the amount due to her, and has assigned the residue "to her sister Anne Powell, without recourse to her, and is now "*wholly disinterested in the event of this suit, but there *463] "is yet due to the said Anne Powell, and Josiah Hewes "more than $4500, of the debt aforesaid; that she was present "at a meeting between the said Montgomery, Bickham, Hewes "and Wheelen, respecting the debts due from Wheelen and Mil- "ler to them, when it was stated by Montgomery and Bickham, "that there was due and unsatisfied for their advances to Whee- "len and Miller considerable sums, which statement was as- "sented to by Israel Wheelen."

Messrs. Rawle and Morgan for the plaintiff, did not go into the merits of the cause, but contented themselves with observing, that where a verdict is given against evidence, the court will

[Waln, Indorsee, *v.* Wilkins et al.]

exercise their legal discretion, as to awarding a new trial. It is not asserted, that the verdict is manifestly wrong; but here have been contradictory verdicts, and the testimony of Martha Powell affords a ground for a new trial. She was not a competent witness at the former trials, but has released her interest since. The plaintiff could not compel her to qualify herself earlier as a witness, though he was well aware of what she could prove. On the last trial, it was much relied on, that considering the note to have been given for the purposes of accommodation, the plaintiff was a trustee for Wheelen; but the testimony of Miss Powell, shews that he was a trustee for specific creditors and third persons being interested therein, they ought not to be affected by the conduct of their trustee. There was no impropriety in the entry extracted from the plaintiff's books, charging the sums paid on the first trial to Wheelen. The plaintiff held the note as a security for his advances, and he was only responsible for the nett proceeds. We stand on the same ground as upon the former trials, and have not changed it. If the testimony of Powell disagrees from Wheelen's, let another jury judge of their relative credibility.

The plaintiff had been taken by surprise. When the court awarded a new trial in December 1804, they did not express their reasons lest it might prejudice the cause on a future investigation; and the counsel received notice from their adversaries to produce proof of the consideration paid when the note was indorsed, which was afterwards waived, as proceeding from the mistake of the clerk who delivered it. This was not inserted in the specification disclosing the ground of defence; and by these means, the plaintiff came on to trial, unprepared to establish facts highly material in the investigation of the true merits of his case.

Messrs. E. Tilghman and M. Levy for the defendants, went *more fully into the evidence; but their observations thereon are herein omitted.	[*464

It is agreed, that the cause went fairly to the jury, under the charge of the court. It is not said, that the verdict was against evidence, but that the evidence was ambiguous. This however is no ground for ordering a new trial; nor that a contrary verdict has heretofore been given, which was set aside unanimously by the court. The reason of setting it aside could not be mistaken, as the foundation of the defence rested on the point, that it never was designed as an accommodation note. The arguments upon the motion for the new trial were directed almost exclusively to this question. The defendants were under no obligation to give notice to the plaintiff, that he must prove himself a fair indorsee for valuable consideration, and thereby put him on his guard. If he claimed the money as under an accommodation note, his counsel well knew that the law imposed this necessity upon him.

Much stress is laid on evidence discovered since the last trial, as is said with respect to the testimony of Martha Powell. When she indorsed the note to her sister, does not appear by her affidavit. If it was before the last trial, the ground wholly fails, because then she might have been called as a witness; but if it was subsequent thereto, she should have removed her disqualification in proper time. It is admitted that the plaintiff knew what she could prove. Why then did he not bring her forward? Sunday intervened during the trial, during which the plaintiff's books were examined. When on Monday, it was urged that the plaintiff was a trustee for Wheelen, from the entry discovered in his books, on which so much reliance was placed, why was not she then examined? Who shall suffer for the neglect? It is evident that the cause was tried not at the expense of the plaintiff, or of any specific creditors, but of Wheelen himself.

During the former trials it was contended, that the plaintiff was induced to take the indorsement by the conduct of Mr. Duncan himself; and Wheelen was adduced to shew, that it was made to him to secure his own advances. Miss Powell affirms, that it was made to secure other specific creditors, and thus converts the person who has always claimed the money in his own right, into a mere trustee for others. No one can be permitted to change his ground in this manner, and thus blow hot and cold at the same time. If Mr. Waln is interested at all in this note, and Martha and Anne Powell with Josiah Hewes were only concerned therein to the amount of $4500, it necessarily follows that the plaintiff's interest was fairly tried by the jury, and their decision upon the whole matter, was perfectly just.

*465]   *TILGHMAN, C. J. did not sit during the argument, he was formerly of counsel in the case.

YEATES, J. delivered the opinion of the court as follows:

The present motion is not founded on any supposed misdirection of the judge, who tried the cause, to the jury; nor has it been alledged, that the verdict given for the defendants, was manifestly against evidence. But it has been contended, that it was obtained by surprise on the plaintiff at the trial. This surprise, it is said, has been in some degree occasioned by the courts' omitting in December term 1805, to express the grounds on which they awarded a new trial.—I cannot accede hereto.

The plaintiff's claim was attempted to be repelled on the first trial, under a supposition, that Wheelen and Miller owed a larger sum to Wilkins and Scott; and it was also insisted, that the note in question could not be considered as an accommodation. On the first ground, the court without hesitation declared, that the set off was not sustainable by law; because the debts were not mutual, and between the same parties. Mr. Duncan had no interest in the firm of Ernest and Co., to pay a debt demanded of him, with their money. This would be doing injustice to

Mathew Ernest and Charles Wilkins, two of the members of that firm, who were not concerned in the present transaction.

The defence was afterwards conducted on the principle of its not being an accommodation note, which was combatted by the plaintiff's counsel.

The charge of the court was conformable thereto, and the arguments on both sides were stated to the jury. Upon the argument on the rule to shew cause, the same question was again taken up ; and the court expressed their unanimous opinion, that there was reasonable ground to doubt, that justice had not been done, but refrained from going into further particulars, as the enumeration of them might tend to prejudice the plaintiff on the second trial. Upon what point, could the judgment of the court have been founded, except on the character of the note ? We were fully satisfied, that it was not an accommodation note, but was bottomed on a real purchase of lands, and given for the indemnity of Wheelen and Miller ; which Wheelen, during his difficulties did not think of raising money upon, from the summer until December 1796. It was a large note, not divided as the notes of Wheelen and Miller were, drawn by persons living at great distances from the city, and in different places, payable 11 days earlier than the three notes, so that Wheelen and Miller should be in funds, to meet the payments on the 3d March. Besides it was not between the same parties, so that Duncan could have *no benefit thereby, if his note [*466 might be negotiated and the monies paid thereon should not be applied in discharge of the contract for the lands.—I have seen no reason, after the fullest reflection, to alter the opinion which I then formed.

But if even it should be considered as an accommodation note, it was incumbent on the plaintiff to shew that it came from him in a fair course of trade, that he had paid a valuable consideration for it, and that there was no trust whatever for Wheelen in the indorsement. This was gone into fully on the last trial, and the books of the plaintiff were strongly relied on, to shew that Mr. Waln was a trustee for Wheelen, or his creditors. The point was correctly stated in my idea, by Judge SMITH to the jury, and left to their decision, together with the question, whether by the fair understanding of the parties, it was intended to be an accommodation note, or not. The jury have found for the defendants : but whether they formed their judgments on the one or other of the points, does not appear to the court.

It has been urged, that the plaintiff is furnished with the evidence of Martha Powell since the last trial, of which he is desirous to avail himself. It has been determined, that where testimony is not known at the trial, which will throw light on the cause, the court will grant a new trial, where there is no default in the party. It is acknowledged, that the plaintiff knew here, what she could prove ; but that she did not become a competent witness, until she assigned her interest in the money due

[Waln, Indorsee, *v*. Wilkins et al.]

to her from Wheelen and Miller to her sister Anne Powell without recourse.

I forbear to say any thing of her materially contradicting the testimony of Israel Wheelen.

But whose fault was it, that Martha Powell was not examined upon the last trial? It can be imputed only to the plaintiff or Miss Powell.

If to the former, he cannot derive a benefit from his own default. When he deemed his case sufficiently strong to go to trial, under the testimony he was then possessed of, he must be supposed to be liable to all consequences. But if the fault be imputable to Martha Powell, she must be considered as the *cestui que use* of such proportion of the note, as according to her affidavit, she was entitled to under the indorsement. As far as appears, she took no active part in the cause from 1797, until 1807, though she must necessarily be supposed to have known, that the action was going on. Ought she not to have removed her disqualification earlier, if she was willing to be affirmed as a witness? Shall a party interested lay by, while a suit is carrying on in the name of another, and the latter avail himself of the neglect of the former, in not releasing her interest, and thereby render herself a *competent witness? In my idea, the same principle, which is applicable to the plaintiff, will also operate against such *cestui que use*.

The judge who tried the cause has not expressed any disapprobation of the last verdict; and therefore under all the circumstances of the case, I have no hesitation in saying, that the motion on the part of the plaintiff for a new trial should not be granted.

SMITH, J. concurred.

BRACKENRIDGE, J. Upon the first trial, I declare, that I thought the question, whether the note was of accommodation or of indemnity, was mere matter of law; upon which the opinion of the court should have been explicitly given to the jury; but I was overruled by the other members of the court. I still retain my former opinion, that it was a question of law, and that the judge should have charged the jury accordingly. But I am decisively of opinion, that it was not an accommodation note, and that a new trial ought not to be awarded.

Motion denied.

Cited in 5 S. & R. 470 to show that there can be no set-off, unless both debts are respectively due, between, exactly, the same parties: See Stewart v. Coulter, 12 S. & R. 252.